# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

VENETIAN BLIND & FLOOR COVERING, LTD.,§
D/B/A GULF COAST WINDOW COVERING     §
      *Plaintiff*,                         §
                                           §
vs.                                          §      CIVIL ACTION H-08-2451
                                           §
WELLS FARGO BANK, N.A.,                       §
      *Defendant*.                         §

## MEMORANDUM OPINION AND ORDER

This banking dispute is before the court on defendant's motion to disqualify plaintiff's expert witness (Dkt. 48).  A hearing was held on January 14, 2010.  Defendant's motion is denied.

Plaintiff has sued defendant for conversion of 654 checks that its employee (Marcia Sinclair) wrongly deposited into her own bank accounts.  Plaintiff hired Micheline Ellas "to review Wells Fargo's teller policies and procedures, compare them to the actual deposit transactions at issue, and determine whether or not Wells Fargo acted in a commercially reasonable manner in handling such deposit transactions."[1]  In other words, Ellas will testify that Wells Fargo was negligent.

Defendant moves to strike Ellas because she is not qualified to give an opinion about reasonable commercial standards for accepting checks, and her method is unreliable.

---

[1]     Affidavit of Micheline Ellas, ¶ 25 (Dkt. 72).

### *Daubert* Standards

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise." FED. R. EVID. 702.[2] The admissibility of an expert's testimony is committed to the trial court's sound discretion. *See Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146-147 (1997); *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 630-31 (5th Cir. 2008).

The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion she seeks to express. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156-57 (1999)); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The expert testimony must also be relevant and reliable. *Bocanegra v. Vicmar Serv., Inc.*, 320 F.3d 581, 585 (5th Cir. 2003) (listing and applying five non-exclusive *Daubert* factors for assessing reliability).

"This so-called 'gate-keeping' obligation applies to all types of expert testimony, not just 'scientific' testimony." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617-18 (5th Cir. 1999). However, *Daubert*'s suggested indicia of reliability do not

---

[2]     Federal Rule of Evidence 702 governs the admission of expert testimony and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

necessarily apply to all types of testimony.  Reliability is a fact-specific inquiry.[3] *Kumho,* 526

U.S. at 147-151; *Skidmore,* 188 F.2d at 618; *Black v. Food Lion, Inc.,* 171 F.3d 308, 311 (5th

Cir. 1999).

<u>Analysis</u>

The subject matter of the expert testimony at issue in this case is commercially

reasonable banking practices.  It is not scientific testimony, and the *Daubert* factors, relied

upon so heavily by Wells Fargo, are not particularly relevant or helpful.

As an initial matter, the court concludes that Ellas is qualified by her education,

training, and experience to give the opinions she expresses in her report.  Wells Fargo's

motion lists a number of specific tasks Ellas has never performed, but ignores the education

and work experience that Ellas does have.[4]   In essence, despite Wells Fargo's

characterizations, what Ellas did was perform a type of bank audit, a field in which she has

over 25 years experience.

---

[3]     The five *Daubert* factors are (1) whether the experts theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of  a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. 509 U.S. at 593-94.

[4]     Ellas Affidavit, ¶¶ 3-24.  Interestingly, Wells Fargo attacks Ellas for never having testified as an expert before.  Reply, at 6.  It is usual practice to attack "professional" experts for testifying too often.

The court further concludes that Ellas's testimony is relevant. Wells Fargo does not argue otherwise. Whether Wells Fargo exercised ordinary care[5] in handling the checks goes to the heart of Gulf Coast's UCC § 3.420 conversion claim, and Wells Fargo's § 3.405 defense.

Finally, the court concludes that Ellas's methodology is sufficiently reliable to render her opinion testimony admissible. The primary work conducted by Ellas, and the primary foundation for her ultimate opinion that Wells Fargo did not act in a commercially reasonable manner, involved comparing what actually happened with each check to Wells Fargo's ***own*** policies and procedures. Ellas performed 4 "tests" of Wells Fargo's performance in connection with the 654 checks at issue. First, she reviewed each check to determine whether the payees and endorsements to determine whether they comply with Wells Fargo's standard requiring that "all deposited items must be verified to ensure that all payees have properly endorsed the items. The final endorsement must be that of the depositor." Second, she determined whether Wells Fargo  followed its own requirement that a teller must "deposit checks payable to a business to that company's account."  Third, she reviewed whether each check was deposited in compliance with Wells Fargo's policy that "the next level of authority must approve all deposits over the team member's deposit limit." Fourth, she examined whether Wells Fargo complied with its "the t-method verification process" for

---

[5]    "Ordinary care" under the UCC means "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." TEX. BUS. COM. CODE § 3.103 (9).

any deposits totaling $25,000 or more, or individual checks in the amount of $5,000 or more. In connection with each of the four tests, Ellas observed that she surveyed three banks in Houston, (BBVA Compass, Amegy Bank of Texas, and Whitney Bank) and they all have standards comparable to those of Wells Fargo.[6]

Wells Fargo attaches far too much significance to snippets of Ellas's deposition testimony.  When asked "could you have done your report, could you have prepared your opinion without [the survey]? Ellas answered:  "No."[7]  However, the question is compound, making Ellas's response ambiguous.  More important, nothing about the survey renders Ellas's opinions inherently unreliable.

Ellas's affidavit states that she performed the survey not to learn reasonable commercial standards, something she learned in her 28 years of experience in banking, but only as further support for her opinion that Wells Fargo's internal practices and procedures were commercially reasonable and if followed would have reduced Gulf Coast's loss.[8] Under the stringent standard Wells Fargo suggests, an expert could only opine as to

---

[6]     Wells Fargo takes issue with Ellas's choice of these three institutions to the exclusion of others.  This is certainly an appropriate topic for cross examination.

[7]     Deposition of Micheline Ellas (Dkt. 48-4), at 136.

[8]     Ellas's Affidavit (Dkt. 72-1), at 29.  This is supported by her deposition testimony that prior to her engagement in this case "I knew generally the procedures for accepting the deposits, and I knew generally the procedures for getting approvals."  Ellas Dep., at 50-51.   To address Wells Fargo's sports analogy –  Earl Campbell would not need to do a survey to testify how to run for a touchdown or break a tackle.  But if asked to opine on how most running backs in the NFL do it (or did it when he was playing), he might reasonably call up a few running back friends and ask, or at least watch tape.

5

commercially reasonable banking standards if she had personally worked for every bank in the Houston area. Such a degree of personal knowledge is not required by Rule 702 or *Daubert*.

Wells Fargo argues that Ellas's methodology is flawed because its own policies and procedures cannot set the standard for commercial reasonableness because they do not bind other banks. But surely Wells Fargo's policies are some evidence of the standards prevailing in the area. Nor does it matter that the banks Ellas surveyed are not nearly as big as Wells Fargo. The U.C.C.'s definition of ordinary care requires comparison of entities in a particular area engaged in the same business. Wells Fargo has provided no authority requiring comparison of entities of similar size. Wells Fargo and the three banks surveyed by Ellas are undeniably engaged in banking. This case does not involve a sophisticated type of investment banking in which local entities are not engaged, but common retail banking, *i.e.* the acceptance of checks for deposit into a customer account. In short, it is not unreasonable for Ellas to draw on her own experience, and the practices of other banks in forming her own opinions.

Finally, Wells Fargo argues that Ellas's opinion that 100% of the fault for Gulf Coast's loss rests on Wells Fargo is pure speculation.[9] Ellas was not hired to give an opinion on comparative fault. Her report does not include such an opinion, but states only that Wells

---

[9]     Motion, at 10 (citing Ellas Dep., at 201-212).

Fargo "contributed to the loss," and the exercise of ordinary care would have reduced Gulf

Coast's losses.[10]

**Conclusion**

      For the reasons discussed above, Wells Fargo's motion to disqualify Micheline Ellas

(Dkt. 48) is denied.

      Signed at Houston, Texas on February 2, 2010.

Stephen Wm Smith
United States Magistrate Judge

---

[10]    Ellas's report (Dkt. 72-3).